UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ERNESTINA TIJERINA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.  06-cv-4069 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court are the Motion for Summary Judgment filed by Plaintiff, Ernestina Tijerina [Doc. 18], and the Motion for Summary Affirmance filed by Defendant, Michael J. Astrue [Doc. 21]. For the reasons that follow, the Motion for Summary Judgment is DENIED and the Motion for Summary Affirmance is GRANTED.

**BACKGROUND**

Plaintiff, Ernestina Tijerina, applied for disability insurance benefits on July 24, 2003, alleging that she became unable to work because of a disabling condition on January 1, 1998 (Tr. 86). Her claim was initially denied on January 13, 2004 (Tr. 50) and upon reconsideration on August 26, 2004 (Tr. 56). Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before ALJ Wampler on May 11, 2006 (Tr. 26). ALJ Wampler issued an unfavorable decision on June 19, 2006 (Tr. 16-22). The Appeals Council denied review on September 26, 2006 (Tr. 5). Plaintiff now seeks review in this Court.

ALJ Wampler held that Plaintiff's date last insured was December 31, 2002 (Tr. 21). He found that Plaintiff had not engaged in substantial gainful employment since January 1, 1998. He found that Plaintiff suffers from a variety of conditions including, in part, diabetes,

hyperlipidemia, fibromyalgia, back pain, depression, and panic disorder.  He nonetheless found that prior to December 31, 2002, Plaintiff had the functional capacity to perform skilled work at medium exertion.  He further found that from October 1, 2003 to November 30, 2005, Plaintiff retained the functional capacity to perform skilled work with light exertion.  And, finally, the ALJ found that from December 1, 2005 onwards, Plaintiff was disabled within the meaning of the Social Security Act.   In light of these findings, ALJ Wampler concluded that Plaintiff was not entitled to benefits because, as of the date last insured, she was not disabled and therefore capable of working.

## Medical History

From the record, it appears that Plaintiff suffers from a number of ailments including diabetes and reduced liver function.  However, there is no indication in the record, or the parties' briefs, that these conditions render Plaintiff disabled.  Rather, Plaintiff focuses on her mental condition and joint and general pain in asserting that the ALJ erred in denying benefits.  As such, a full recitation of Plaintiff's various conditions is not warranted.  Plaintiff's medical records with respect to her mental impairments and her pain allegations will be discussed.

Plaintiff alleges that she suffers from debilitating depression and other mental deficits.  The medical records appear to date back to July 2000 when Plaintiff began seeing Dr. Pragnesh Patel for primary care at the Community Health Care, Inc.  She presented with a thyroid condition, Hyperlipidemia, and low back pain, in addition to a number of other ailments throughout the course of treatment.  Dr. Patel's notes generally reference the status of Plaintiff's diabetes and weight issues.  At no point in Dr. Patel's typewritten notes are there any specific references to Plaintiff's mental condition or a diagnosis of any particular mental condition or any medication for a mental condition.  However, "visit notes" which are signed by nurses,

beginning in October 25, 2001, contain a check mark near depression underneath a subheading of "Health Profile." (Tr. 245). On September 6, 2002, Plaintiff first complained of fatigue and feeling down to a nurse; however, Dr. Patel's notes for the same day do not indicate these complaints (Tr. 231-232).

In October 2003, Dr. Peter Biale, a medical doctor, performed a consultative examination of Plaintiff for the Bureau of Disability Determination (Tr. 157). Dr. Biale, who spent 47 minutes with Plaintiff, indicated that she was depressed with crying spells, that she was not sleeping at night, and that she has generalized muscle pain (Tr. 158). Dr. Biale noted that Plaintiff was under treatment for Hypertension, Hypothyroidism, chest pain (which causes sharp pain twice a week that lasts for an hour, Diabetes, GERD (Gastroesophageal Reflux Disease), and Hypercholesterolemia. Dr. Biale indicated that Plaintiff has a Fibromyalgia problem which causes tiredness, poor sleeping, and depression, but did not indicate that she was receiving treatment for this condition (Tr. 161). Finally, Dr. Biale indicated that Plaintiff had never been treated for depression but that "she is very depressed." (Tr. 161).

On November 19, 2003, Dr. Stephen Paul Singley, a psychologist, conducted a mental status evaluation. Dr. Singley did not have prior medical records (stating "there was no independent background documentation available to the case file) and his assessment was based on the interview (Tr. 162). According to Dr. Singley, Plaintiff suffers from a mood disorder related to her mental and health issues with a depressive component (Tr. 164). Dr. Singley also assigned a current global assessment of functioning score of 50 (Tr. 164). This conclusion was

similar to consultative Dr. Jerrold Heinrich's assessment that Plaintiff's "mood disorder" was secondary to her physical problems and that she had "some depressive symptoms." (Tr. 311).[1]

On November 9, 2004, Plaintiff was initially seen by Dr. Robert L. Lawton, upon a referral from Dr. Leighton Arcenas,[2] for psychiatric help. Upon examining Plaintiff, Dr. Lawton stated: "She denied feeling particularly depressed and was not clear why Dr. Arcenas had diagnosed her as having depression. Affect appeared mildly depressed and lackluster with restricted range of appropriate emotional reactions." (Tr. 409). Nonetheless, Dr. Lawton prescribed Effexor ER and treated Plaintiff for at least a year. In the next few visits, Plaintiff's medication was changed twice but Dr. Lawton noted that "there was little change in the patient's mental status." (Tr. 398 -407). Plaintiff appeared to take a turn for the worse in an August 18, 2005, session as a result of various family illnesses and issues; however, in October 2005, she began "feeling a little better." (Tr. 395). On December 7, 2005, Dr. Lawton completed an ability-to-work assessment in which he noted that Plaintiff was preoccupied with somatic problems and that she was easily fatigued. (Tr. 392). Nonetheless, he indicated that she had very good to good mental ability to do semiskilled or skilled work; that she had very good or good mental ability to do unskilled work; but that with regard to her ability to maintain regular attendance on a job and her ability to complete a normal workday, she only had a fair ability. (Tr. 390-391).

---

[1] Dr. Heinrich nonetheless concluded that Plaintiff had the mental capacity to perform simple tasks with various moderate limitations related to the ability to follow instructions, concentration, punctuality, interaction with others, and dealing with change (Tr. 310).

[2] Plaintiff was being treated by Dr. Arcenas from April 2004 to at least April 2005 (Tr. 357-376) for her physical ailments. In a functional capacity questionnaire filled out on March 12, 2004, Dr. Arcenas appears to indicate that Plaintiff has no limitations (Tr. 177-180).

At the hearing on May 11, 2006, Dr. Douglas Brady testified as a medical expert. Dr. Brady stated that he reviewed the medical records from October 18, 2003, to the date of the hearing – that is, records from Dr. Biale onward. Dr. Brady opined that Plaintiff met the listing requirements (12.04) as of that date. He indicated that she had a clear history of depressive disorder and a clear diagnosis of Fibromyalgia and chronic pain.

## STANDARD

To be entitled to disability insurance benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step sequential analysis. See 20 C.F.R. §§ 404.1520; Maggard v. Apfel, 167 F.3d 376 (7th Cir. 1999).

In the first step, a threshold determination is made to decide whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. § 416.920(b). If the claimant is not under such employment, then the Commissioner of Social Security proceeds to the next step. Id. Under the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 416.920(c). If the claimant has an impairment that significantly limits their physical or mental ability to do basic work activities, then the Commissioner will proceed to the next step. Id. Under the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the

5

elements on the list are met or exceeded, declares the claimant eligible for benefits. 20 C.F.R. § 416.920(d). If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps. In the fourth step, the claimant's Residual Functional Capacity is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. 416.920(e). If she cannot, then the Commissioner evaluates the claimant's ability to perform other work available in the economy. Id.

The plaintiff has the burdens of production and persuasion on steps one through four. However, once the plaintiff shows an inability to perform her past work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment.  See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g) which provides that "[t]he finding of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Maggard, 167 F.3d at 379 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1970)).

A court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).  A court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed unless the finding is

clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000) (ALJ's failure to adequately address evidence that was contrary to his decision merited reversal); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ erred by failing to discuss evidence regarding claimant's hand dexterity problems). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)).

## ANALYSIS

As indicated above, ALJ Wampler found that Plaintiff was not disabled as of her date last insured, December 31, 2002. Plaintiff argues that the ALJ should have found that she suffered from depression and Fibromyalgia prior to 2003 because of the treatment notes from Community Health Care (while Plaintiff was under Dr. Patel's care). Plaintiff further argues that Dr. Brady's opinion that Plaintiff suffered from these conditions in October 2003 should be an indication that Plaintiff's mental difficulties were a progressive and on-going problem that started prior to October 2003.

Both parties agree that Plaintiff carries the burden of showing that she was disabled at or prior to her date last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130(a)(1); Stevenson v. Charter, 105 F.3 1151 (7th Cir. 1997) (noting that claimant must show that he is disabled as of the date his insured status expired). Thus, the question is whether Plaintiff's onset date was on or prior to December 31, 2002. Plaintiff argues that the ALJ erred

7

in determining Plaintiff's onset date and failed to comply with Social Security Regulation 83-20. The regulation indicates that in order to determine the onset date of a disability, the ALJ must consider "the individual's allegation, the work history, and the medical evidence."  Plaintiff argues, in particular, that because Plaintiff's depression and Fibromyalgia are "slowly progressive impairments:"

> Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began . . . .
>
> SSR 83-20, *2; See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005) ("Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability.").

In Scheck v. Barnhart, 357 F.3d 697 (7th Cir. 2004), the claimant filed for disability benefits on November 13, 1997.  His date last insured was December 31, 1994, three years earlier.  The ALJ found that the claimant was not disabled.  In addressing the issue of onset date and SSR 83-20, the Seventh Circuit Stated that:

> SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time. The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83-20 does not apply.  Id. 357 F.3d at 701.

8

Thus, in order for SSR 83-20 to apply, there must be a finding that the claimant was disabled as of her application date.[3] This was the scenario in Brisco. In that case, the claimant applied for disability benefits on December 11, 1996, and his date last insured was March 31, 1991. The ALJ found that the claimant was disabled as of January 4, 1994 (prior to the application). Thus, the Seventh Circuit held that the ALJ was required to employ SSR 83-20 to determine whether the claimant's onset date fell prior to the date last insured. That is, the ALJ was required to determine whether the claimant's onset date was within the date last insured.

In this case, Plaintiff applied for benefits on July 14, 2003, alleging an onset date of January 1, 1998. As noted above, her date last insured was December 31, 2002. ALJ Wampler found that Plaintiff was not disabled prior to December 31, 2002, and that she retained the functional capacity through November 30, 2005, to perform work with light exertion. However, ALJ Wampler then found that Plaintiff was disabled as of December 1, 2005. Unfortunately for Plaintiff, this date is beyond her application date. As Plaintiff was found to be disabled after the date last insured and after the application date, she was not entitled to benefits. In light of this conclusion, SSR 83-20 does not apply, and Plaintiff's arguments on this point must fail. See also Perkins v. Chater, 107 F.3d 1290, 1295 (7th Cir. 1997) ("SSR 83-20 addresses the situation in which an administrative law judge makes a finding than an individual is disabled *as of* an application date, and the question arises whether the disability arose at an earlier time." (emphasis in original)).

This conclusion renders much of Plaintiff's additional arguments moot. Nonetheless, Plaintiff next argues that the ALJ erred in finding that Plaintiff retained the residual functional capacity to do work of medium exertion because his conclusions are not supported by the record.

---

[3] The reason for this conclusion is that a claimant may be entitled to benefits for the 12 months preceding an application date. 42 U.S.C. §§ 416(i)(2)(E)

ALJ Wampler found that prior to December 31, 2002, Plaintiff retained the capacity to perform skilled work at a medium range of exertion. Contrary to Plaintiff's argument, the ALJ's conclusion is supported by substantial evidence. See Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008). In particular, Dr. Patel's treatment notes do not reflect the type of limitations that Plaintiff advocates. As Plaintiff points out, the ALJ is not allowed to "play doctor" and substitute his own judgment for that of medical doctor's, Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003); however, as Defendant points out, the Commissioner is tasked with determining Plaintiff's residual functional capacity. See 20 C.F.R. § 404.1520.

ALJ Wampler described the medical records from Community Health Care, Inc. and in particular Plaintiff's physical complaints as recorded by Dr. Patel. ALJ Wampler noted that prior to October 2003, Plaintiff's "most significant diagnosis was hypertension" and that Plaintiff had good control over her diabetes, hypertension, liver disease and other conditions "without significant progression." (Tr. 18-19). The ALJ also indicated that she only reported sporadic joint pain and headaches that did not require referral to any other medical professional or physical therapy (Tr. 19). ALJ Wampler finally indicated that Plaintiff was able to perform cooking and housework during that time period. These conclusions are borne by the record.

Dr. Patel, at his first evaluation of Plaintiff noted that she had chronic back pain due to her work as a home health care provider (caring for the needs of a wheel-chair bound person), and she was told to continue with Ultrum (used to treat moderate to moderately severe pain) (Tr. 259). In August 2000, she followed up with no pain complaints except neck pain that was resolved with Advil (Tr. 257). In October 2000 she reported pain due to kneading dough but there was no indication that additional medication was prescribed for her pain (Tr. 255). These types of complaints continued without any apparent increase in severity or the type of treatment

prescribed. With respect to the depression and Fibromyalgia, ALJ Wampler did not specifically discuss these notations in these records. The failure to discuss these instances, however, is harmless. Plaintiff argues that these notes indicate a diagnosis of depression and Fibromyalgia. However, Dr. Patel's treatment notes make no mention of these conditions – not just that they were considered and rejected, there is absolutely no mention of these conditions by her primary physician. Plaintiff also does not point out that she was prescribed medication for these conditions or that she was referred to a specialist.

As ALJ Wampler noted, Plaintiff's depression was not diagnosed until October 2003 and Plaintiff's condition has deteriorated since that time. Such a finding, however, does not translate into a conclusion that Plaintiff's mental impairments rendered her disabled as of December 31, 2002. Of significance in this regard is Dr. Biale's notation that Plaintiff, at the time of his examination in October 2003, was not receiving any treatment for depression. There is no medical evidence, either from a treating physician or a consultative physician, that Plaintiff's depression or Fibromyalgia significantly limited her ability to work prior to December 31, 2002. As such, the ALJ's finding that Plaintiff retained the RFC to perform medium exertion activity, prior to December 31, 2002, was supported by substantial evidence in the record. And, as Plaintiff's statements of wholly disabling pain is unsupported by the record, this Court cannot find that disregarding that testimony was patently wrong. See Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006).

Plaintiff finally argues that the ALJ erred in describing Plaintiff's ability to do skilled versus unskilled work from October 1, 2003 to November 30, 2005. In light of the foregoing conclusions, this argument is moot as Plaintiff failed to establish that she was disabled prior to her date last insured or her application date.

In sum, the ALJ did not err in finding that Plaintiff was not disabled prior to December 31, 2002. Plaintiff's medical records did not support a finding that she had debilitating depression or Fibromyalgia such that she was incapable of performing her past relevant work.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff, Ernesina Tijerina [Doc. 18] is DENIED, and the Motion for Summary Affirmance filed by Defendant, Michael J. Astrue [Doc. 21] is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED

Entered this _31st_ day of March, 2008

                                                s/ Joe B. McDade
                                                JOE BILLY MCDADE
                                                United States District Judge